[No. 919. Decided October 31, 1893.]

JAMES B. HAYNES, *Appellant*, v. TACOMA, OLYMPIA & GRAY'S HARBOR RAILROAD COMPANY, *Respondent*.

ATTORNEY AND CLIENT — UNAUTHORIZED ACTS — PROOF OF RATIFICATION.

An attorney employed by a railroad company merely to represent it in a condemnation proceeding for right-of-way across certain land, has no authority to bind the railroad by an agreement for the payment of damages to a person not a party to the suit, on account of interference with a logging road operated by him across such proposed right-of-way.

The ratification of an unauthorized contract by an agent of a railroad company to pay $50 per day damages for hindering the use of a certain logging road by the construction of the railroad's right-of-way across same cannot be shown by proof that the contractors for the railroad raised the tracks of the logging road and put in a crossing, in the absence of any showing that the work was done in pursuance of such agreement and with knowledge thereof by the party and its agents sought to be charged.

*Appeal from Superior Court, Chehalis County.*

*M. J. Cochran,* and *D. Allen,* for appellant.

*Ashton & Chapman,* and *A. E. Griffiths,* for respondent.

The opinion of the court was delivered by

STILES, J.—Plaintiff sued upon an alleged express contract whereby defendant agreed to pay him fifty dollars per day for every day during which he should be hindered in the use of a certain logging railroad which the defendant sought to cross with its track, and the trial of the same resulted in a non-suit, from which he appeals.

The only error assigned is the granting of the non-suit. The appellant maintains that he produced some evidence tending to show a contract made by agents of the respondent with one Weatherwax for his benefit, and that if he failed in showing the agency of the persons who represented the respondent, then there was some evidence of a ratification of their acts by respondent. It might, perhaps, be sufficient to say that the suit was not brought upon the theory of a contract made by a third party for appellant's benefit, but of an express contract with appellant himself. But we shall go a little farther into the merits of the case. The trial developed that the suit was based upon the following state of facts: One Hoffelt was the owner of certain lands over which the respondent sought to construct its railroad; and one J. M. Weatherwax held a lease of the land. One Goodell was the right-of-way agent of the respondent, with authority to negotiate for rights-of-way, subject to the approval of superior officers of respondent. His negotiations for a right-of-way over the land in question failed, and the law officers of the respondent instituted a condemnation suit in the superior court of the county, to which Weatherwax was a party. Mr. Griffiths, an attorney-at-law, residing in the county,

was the local attorney for respondent in the prosecution of the condemnation suit, and tried the case in its behalf. Weatherwax was represented by his attorneys, and his principal claim for an allowance of damages appears to have been not so much his leasehold as the protection of a logging railroad which he had built across the proposed line of respondent's road. This logging road was in the qualified possession of appellant under an employment by Weatherwax, whereby he was to log the timber off certain lands and, by means of the railroad, deposit them in a certain slough, for the price of four dollars per thousand feet of the logs.

While the condemnation case was in process of trial, Weatherwax made it known to his attorney and the attorney for respondent, that all that he desired was to have the logging road put in good order for continued use by means of a proper crossing at respondent's track, and compensation for appellant during such time as he should be deprived of the use of the road; and this disposition of the case as against Weatherwax was agreed to, the sum of fifty dollars per day being named as the compensation for the temporary stoppage of appellant's use of the logging road. Upon that understanding the case proceeded, and terminated in a decree of appropriation, in which the rights of Weatherwax were included, but in which no mention was made of any of the matters said to have been stipulated with reference to the logging road. Not having been included in the decree, or made of record as required by Code Proc., § 95, the respondent could not be bound by the stipulation.

But the appellant maintains that, as he was not a party to the condemnation suit, and as the only benefit to be derived from the arrangement made in the court house was to inure to him, there was an independent contract upon which he could sue; and to reinforce his position he shows

that during the recess of the court he had some talk with Goodell, the right-of-way agent, which was the same in substance as that which subsequently occurred in the court house, except that it was more pointedly understood that the contract was to be with him and not with Weatherwax. Bearing in mind, however, that Griffiths was merely the attorney of respondent, for the trial of the case of Railroad Co. v. Hoffelt and Weatherwax, and was not endowed with any general authority by respondent, it cannot be admitted that any contract he might make, either with Weatherwax for appellant's benefit, or with appellant himself, could bind respondent, and, as to Goodell, it is enough to say that it did not appear that, even in the most insignificant right-of-way matter, his authority went any further than the reception of proposals, all final action being reserved for his superiors.  The most strenuous efforts of counsel, aided by liberal rulings on the part of the court as to admission of evidence, accomplished no more than this.

On the point of ratification there was no direct evidence. Among the engineers and contractors of respondent there seemed to be a general understanding that the logging road was to be put in good working order, and they raised the road bed and put in a crossing.  Appellant says that as thus arranged it was a very bad and dangerous crossing, and that for a number of days his road was blocked so that he could not use it at all, and afterwards the operation of it was necessarily so slow that he had to give it up, so that his damage at the rate of fifty dollars a day was $17,200.

These acts of raising the track of the logging road and putting in a crossing, it is claimed, ought to have gone to the jury as tending to show ratification of the agreement made by Griffiths and Goodell.  But admitting, for the sake of the argument, that the engineers had full information that the respondent was under obligation to put the logging road in good order, it does not follow that any

person authorized to represent and bind respondent knew anything about the proposition to pay fifty dollars per day, nor did the testimony tend to show any such knowledge. On the other hand the testimony was exceedingly meager on the point that what was done by the contractors was in pursuance of any agreement. It would have been very bad treatment of appellant to cross and interrupt this railroad without any attempt to repair it and leave it in substantially as good condition as before, and upon their failure to do so the actual damages would have been recoverable in a proper action. But this was not a suit for actual damages, but for liquidated damages under an express contract, and we, therefore, find no error in the court's ruling.

Judgment affirmed.

DUNBAR, C. J., and HOYT, ANDERS and SCOTT, JJ., concur.